Caleb, J.), admitted that the language of the act of 1853, in the passage in question, was not free from difficulty, but denied the claim of the marshal, on the ground that to allow it would be to give him a gratuitous compensation for services not actually rendered. It adds: "The law, I think, contemplated the presence of both the parties litigant in court, and the whole progress of the litigation short of the sale under the final decree; or it contemplated the possession of the property by the marshal, and the usual proceedings by advertisement, &c., under an interlocutory order of sale, without the sale itself. It intended to provide an adequate compensation to the marshal for the trouble and responsibility he assumes up to the moment of sale, and to put it out of the power of litigants to deprive him of such compensation for the trouble and responsibility thus assumed, by a compromise or settlement before a sale under a final decree, or a sale under an interlocutory order of court. This, in my judgment, is the only fair and rational interpretation to be given to the provision of the act of congress referred to."

It seems to me that the construction put by Judge McCaleb upon the statute is a strained one. I see no ground for holding that the words "the parties," in respect to a suit in rem, require that there should be a party personally in court as a claimant, aside from the acquiring of jurisdiction by the court, by the service of proper process, or that a party must come into court as a claimant, to litigate, to make him a party settling the debt or claim, within the act. In a suit in rem, the party who settles the debt or claim, without a sale of the property, in order to relieve the property seized, on the stipulation for value, is one of "the parties" within the act, although he files no formal claim to the property. Nor do I see anything in the statute to warrant the view that there must be the whole progress of the litigation short of a sale under a final decree, or possession of the property by the marshal under an order of sale, and steps by him towards a sale, but not followed by a sale. The commission is to be computed on the amount of "the claim or decree," thus making the statute applicable to a settlement either before or after a decree, but without a sale. The words "without a sale" are as applicable to a settlement before decree as to one after, and, in respect to a settlement before a decree, cannot require that there should be the whole progress of the litigation short of a sale. A settlement "without a sale" means a settlement at any time, in the absence of a sale. In case of a sale under process in admiralty, or under the order of a court of admiralty, special compensation by way of commission is given, in the passage before cited from the act. By the clause now under consideration, a fee is given for serving an attachment in rem, or a libel in admiralty. and then the necessary expenses of keeping property attached or libelled in admiralty are provided for, and then a commission to the marshal, that is, to the marshal who attached or libelled the property, is prescribed, in case the debt or claim is settled by the parties without a sale of the property, such commission to be computed on the amount of the claim or decree. In case there is a sale, the commissions therefor. which are at a different rate, go to the marshal to whom the process or order for a sale belongs for execution, and who makes the sale, and no commission is allowed under the clause relating to a settlement without a sale. It seems to me the language of the statute is too plain for any other construction.

A payment of the amount awarded by a decree is a settlement, within the statute. The commission is allowed, in case of a decree, to be computed on the amount of the decree. Therefore, a settlement cannot be limited merely to an arrangement or compromise before decree.

Nor does the fact that the property is discharged from custody on a stipulation for value make any difference. If the legislature had intended that the commission should be given only when the property continued in the custody of the marshal until the settlement, it would have been easy to so declare. But such a provision would have been easily evaded, by bonding the property, after the trouble of custody had all of it been undergone, and on the very eve of making a settlement.

A case of the collection of the amount of a decree, or stipulation, by execution against the stipulators, would come under another provision of the act of 1853, which gives to a marshal, for serving a writ of execution, mileage, and for making the service, seizing or levying on property, advertising and disposing of the same by sale, set-off, or otherwise, according to law, and receiving and paying over the money. the same fees and poundage as are or shall be allowed for similar services to the state sheriff. Such a collection by execution could not be called a settlement by the parties of the debt or claim without a sale of the property seized on the original attachment, so as to make it possible that a party should be subjected to a double charge, one for the commissions, and one for the fees and poundage.

The decision of the clerk on the taxation must be reversed.

---

## Case No. 12,171.

### In re RUST.

[1 N. Y. Leg. Obs. 326.]

District Court, N. D. New York. 1843.

BANKRUPTCY — EXECUTION — ACTUAL LEVY — DECREE—RELATION BACK.

1. The personal property of a bankrupt passes to the assignee in virtue of a decree of bankruptcy, notwithstanding the delivery to the sheriff of an execution against the bankrupt. prior to the filing of the petition.

[Cited in Re Paine. Case No. 10,673.]

[Cited in brief in Edwards v. Entwisle, 2 Mackey, 47.]

2. It seems that an actual levy before petition filed, would give to the plaintiff such a lien or priority as is protected by the bankrupt act.

3. The decree of the bankruptcy in compulsory cases, as in cases of voluntary application, operates by relation back to the time of filing the petition, at least.

4. Whether its operation does not also extend to the time of committing the act of bankruptcy, except so far as the doctrine of relation is limited by the first proviso of the second section of the bankrupt act [5 Stat. 440], quære.

[In the matter of Elam Rust, an involuntary bankrupt.]

This case came before the court on the petition of the assignee of the bankrupt.

Mr. Hall, for assignee.
Mr. How, contra.

CONKLING, District Judge: The mere delivery of an execution to the sheriff does not give to the judgment creditor a lien which will prevail over the title acquired by the assignee to the personal effects of the defendant in the execution, under a decree of bankruptcy against him. Such is the established doctrine of the English courts; and there is nothing in the laws of this state, or in the bankrupt act, requiring or warranting a different rule. By the delivery of the execution to the sheriff, the property of the defendant is bound for some purposes; but the title to the property remains in him, and passes to the assignee. Smallcomb v. Cross, 1 Ld. Raym. 252; Cooper v. Chitty, 1 W. Bl. 65, 1 Burrows, 20; Marsh v. Lawrence, 4 Cow. 461. As no levy was made in this case until after the institution of proceedings in bankruptcy, it is unnecessary to decide whether even a levy would have been sufficient to give a lien as against the assignee. I have met with no decision to this effect. A decree of bankruptcy is in the nature of a statute execution for all the creditors, and vests the property of the defendant, ipso facto, in the assignee. Strictly speaking, the title of the defendant is not divested by the seizure under an execution. Still, however, the plaintiff may, in virtue of the levy, acquire such a lien or priority as it was the intention of congress to protect; and as, by the laws of this state, the right thus acquired is superior to that acquired by a subsequent bona fide purchaser for a valuable consideration (Butler v. Maynard, 11 Wend. 548), there seems to be much reason for holding it to be within the saving of the bankrupt act.

For the reason already stated, it is also unnecessary to decide what would have been the effect of a seizure of the goods of the bankrupt on execution, before the filing of the petition on the 7th of August last, but after the day (the 4th of March last) on which the act of bankruptcy was committed. According to the well-known doctrine of the English courts, the adjudication of bankruptcy extends back by relation to the time of the act of bankruptcy, however remote; and avoids all the acts of the bankrupt; the maxim being that a bankrupt can hold no property, and that all his property, from the time of the act of bankruptcy, vests by relation in the assignee. This doctrine prevailed with some limitation until 1825, when, in the consolidated bankrupt act passed in that year, a saving (like that contained in the 2d section of our act) was inserted in favor of persons dealing with the bankrupt in good faith, and without notice of the act of bankruptcy, more than two months before the date, and issuing of the commission. In giving a construction to our act with respect to voluntary applicants, the courts have very properly held that the decree of bankruptcy extends back by relation to the time of filing the petition. This gives to the decree a retroactive operation as extended as the nature of this class of cases admits. With respect to compulsory cases, I am not aware that any decision has been made upon this point. What construction ought to be given to the act in this respect, is a question of great importance. The principle of relation is, in effect, adopted by the 2d section in declaring all future payments, &c., made for the purpose of giving a preference, and in contemplation of bankruptcy, void as against the assignee; and it is also implied and recognized by the proviso in this section relative to dealings with the bankrupt more than two months prior to the filing of the petition. If this latter provision had been in some other part of the act in the form of an independent enactment, instead of following, as it does, the clauses against preferences and frauds, and being in the form of a proviso to it, the inference would have been very strong that the legislature contemplated the application of the doctrine of relation in compulsory cases arising under the act, without any other limitation than that expressed in the proviso. By the order and form of enactment actually adopted the question is undoubtedly to some extent affected. Its satisfactory decision will require an attentive consideration of the policy of the act in connection with these particular provisions. I have assumed in this case that the retroaction of the decree cannot be less extensive in a compulsory than in a voluntary proceeding, and that it must therefore relate back at least to the time of filing the petition by the creditor.

---

RUST (GOODYEAR v.). See Case No. 5,584.