# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

---

GEORGE L. BEARDSLEE, Receiver, *vs.* BRUNO. BEAUPRE and others.

## June 27, 1890.

**Insolvency—Preference—Avoidance by Receiver — Computation of Time.**—The limitation contained in section 4 of the insolvent law of 1881, (c. 148,) as to the date of preferential conveyances and payments by the debtor which may be avoided by the assignee or receiver, is, in the case of a receiver appointed under section 2, to be computed from the date of filing the petition by creditors for his appointment, and not from the date of the order appointing him.

Plaintiff, as receiver in insolvency of Peter J. Richwine, brought this action in the district court for Ramsey county, to avoid, as unlawful preferences, certain payments made by the insolvent to the defendants. At the trial, before *Kerr*, J., it appeared that the first payment (of $2,825.81) was made January 19, 1889, and the second (of $2,406.82) on March 15, 1889; that on April 19, 1889, a petition for the appointment of a receiver was filed, and on April 27, 1889, the petition was granted and the appointment of plaintiff made. It was conceded that plaintiff was entitled to recover the amount of the second payment, and it was also conceded that he was entitled to recover the amount of the first payment "if the statutes of the state permit the recovery of a preferential payment

made more than 90 days prior to the appointment of the receiver, and within 90 days of the filing of the petition for the said appointment." The court thereupon ruled that the plaintiff should recover both amounts, and interest from demand, and directed a verdict for $5,347.66. Defendants appeal from an order refusing a new trial.

*C. M. MacLaren*, for appellants.

*Rogers & Hadley*, for respondent.

MITCHELL, J. Section 4 of the insolvent law of 1881 provides that preferential conveyances and payments made by an insolvent debtor within four months (now 90 days) of making an assignment as provided in section 1 of the act may be avoided by the assignee. We have held that the provisions of section 4 apply to involuntary as well as voluntary bankruptcy, and therefore that such conveyances and payments may be avoided by a receiver appointed in proceedings under section 2. *Bliss* v. *Doty*, 36 Minn. 168, (30 N. W. Rep. 465.) The question in this case, to adopt the language of the trial court, is, "Does the time within which a prior preferential payment can be set aside by a receiver date from the filing of the petition by creditors for his appointment, or from the order appointing him?" It seems to us that counsel for appellants, notwithstanding his exhaustive brief, has fallen into error by misconceiving the real nature and object of bankruptcy proceedings, and also by assuming that the receiver, and not the creditors, is the party in interest. The proceedings are really *in rem*, the *res* being the estate of the bankrupt; and the object is to sequester the estate for the benefit of creditors. Bankruptcy has been called a statute execution against the estate of the debtor in behalf of all his creditors. The creditors are the parties by whom and in whose interest the proceedings are instituted. By reason of the act of bankruptcy of their debtor, they have a right in the property (a *jus ad rem*, if not a *jus in re*) of the insolvent, as it then is, to have it sequestered to pay their claims. To secure united and orderly action, a receiver or assignee has to be appointed, who alone can maintain actions for, or administer upon, the bankrupt's estate; but this he does as the representative of the creditors, to whose rights he succeeds. Of course, no rights can

vest in him until his appointment, but the right of creditors to have the debtor's estate sequestered for their benefit arises when the act of bankruptcy is committed; and, the object of the proceedings being to enforce this right, and the receiver being their representative for that purpose, it would seem logically to follow that the order adjudging the debtor insolvent, and appointing a receiver of his estate, would, in the absence of a statute to the contrary, extend back by relation to the date of the commencement of the proceedings, if not to the act of bankruptcy. Upon this view of the nature and object of such proceedings, the familiar rule under the English bankrupt acts, at least down to 1825, was that an adjudication in bankruptcy extended back by relation to the act of bankruptcy; the theory being that from such act his creditors were entitled to the debtor's property, which vested by relation as of that date in his assignee. This was somewhat analogous to the doctrine that a decree of condemnation retroacts from the time when the property became responsible, and that from the date of forfeiture, either by offence or hostility, it belonged to the government. Under the United States bankrupt act of 1800, an adjudication in bankruptcy retroacted to the act of bankruptcy except as to *bona fide* purchasers before the issuing of a commission. Every modern act, except our own, that we have examined, contains an express provision to the effect that the title of the assignee, when appointed, vests by relation as of the date of the commencement of the proceedings. But this, so far as it adopts the doctrine of relation, is, we apprehend, but declaratory; and, so far as it restricts it to the commencement of the proceedings, instead of the date of the act of bankruptcy, it is really a limitation. This is the only construction that is in harmony with the nature and purpose of such proceedings. It requires no positive provision to support it, but it results by necessary implication to effectuate the obvious purposes of the law. Any other construction would render the act impotent and ineffectual. If the creditors have these rights in the estate of the debtor, and if the filing of the petition by them is the commencement of proceedings to enforce them, it would be very illogical to hold that these rights could be lost, or cease to exist, pending the

proceedings.    Nothing short of an express provision to that effect in the statute would justify a court in adopting any such construction.

The bankrupt act of 1841 provided that the property of the debtor should, by mere operation of law, *ipso facto, from the time of the decree,* be divested out of the bankrupt, and vested by force of the decree in the assignee, and contained no provision that the appointment of the assignee should relate back.    Yet the federal courts, except in the eastern district of Pennsylvania, all seem to have held, so far as we can find, that the decree of bankruptcy, when granted, related back to the date of filing the petition.    This conclusion they deduced from the general provisions and objects of the whole act, and not from any positive provision.    It was held that it resulted by necessary implication, to effectuate the obvious purposes of the act, and to prevent what would otherwise be irremediable mischiefs.    *In re Cheney,* 5 Law Rep. 19; *Ex parte Foster,* Id. 55, 2 Story, 131; *Ex parte Newhall,* 5 Law Rep. 306, 2 Story, 360; *In the matter of Abrahams,* 5 Law Rep. 328; *In the matter of Allen,* Id. 362; *In the matter of Rust,* 1 N. Y. Leg. Obs. 326; *McLean* v. *Lafayette Bank,* 3 McLean, 185, 193.    This construction of the law was very vigorously opposed by Baldwin, J., in *Ex parte Dudley,* 1 Pa. Law J. 302; but he rested his views entirely upon the language of the act, that the bankrupt should be divested "from the time of such decree," and upon the practical results that would follow from such a construction, in view of the fact that the act contained no provision to protect *bona fide* purchasers.    Neither of these arguments can be advanced in the case of our act, which contains no such language as the act of 1841, and does limit the right of the assignee to avoid prior conveyances or transfers by the debtor to preferential ones made to persons who, at the time of receiving the same, had reasonable cause to believe that the debtor was insolvent.    In the case of voluntary insolvency, under the first section, it is the filing of the assignment which is the commencement of the proceedings, and by which the debtor places himself and his property under the jurisdiction of the court.    In the case of involuntary insolvency, under the second section, it is the filing of the petition which constitutes the commencement of the proceedings, and gives the court jurisdiction to proceed.    Therefore, as in the

first case, the time is computed from the filing of the assignment, so in the second case, by analogy, it must be computed from the filing of the petition for the appointment of a receiver. Counsel refers to the language used in the concluding sentence of *Bliss* v. *Doty, supra,* as a decision to the contrary; but an examination of that case will show that no such question was before or in the minds of the court. The only question considered or decided was whether, under section 4, a receiver appointed under section 2 could maintain an action to avoid preferential conveyances, as well as an assignee in an assignment executed under section 1.

Order affirmed.