## Case No. 8,885.

McLEAN v. LAFAYETTE BANK et al.

[3 McLean, 185; [1] 1 West. Law J. 15.]

Circuit Court, D. Ohio. July Term, 1843.

BANKRUPTCY—COURTS—CONCURRENT JURISDICTION—CONVEYANCE IN CONTEMPLATION OF INSOLVENCY—PREFERENCE—ASSIGNEE — JURISDICTION IN BANKRUPTCY.

1. In all cases arising under the bankrupt law, the circuit court has concurrent jurisdiction with the district court.

[Disapproved in Bachman v. Packard, Case No. 709. Cited in Re Sabin, Id. 12,195.]

[See Giveen v. Smith, Case No. 5,467.]

2. A conveyance of property, in contemplation of a state of insolvency, is void under the bankrupt law [of 1841 (14 Stat. 517)].

3. And any mortgage or other lien which is intended to give a preference to one or more creditors over others, is also void.

[Cited in Re Walton, Case No. 17,130; Giveen v. Smith, Id. 5,467. Cited in brief in Norton v. Barker, Id. 10,349.]

4. The circuit court has jurisdiction in all cases where a suit is brought by the assignee of a bankrupt, or against him.

[Cited in McLean v. Lafayette Bank, Case No. 8,887; Giveen v. Smith, Id. 5,467; Foster v. Ames, Id. 4,965; Walker v. Towner, Id. 17,089.]

5. All the property and rights of the bankrupt are vested in the assignee, not only from the decree of bankruptcy, but, by relation, from the time of filing the petition. The assignee also represents the creditors.

[Cited in Beardslee v. Beaupre, 44 Minn. 4, 46 N. W. 137.]

6. The bankrupt power is exclusively vested in the federal government.

7. Congress have not given jurisdiction to the state tribunals to carry into effect the bankrupt law. They have not power to vest such a jurisdiction.

[Cited in Shermann v. Bingham. Case No. 12,762; Goodall v. Tuttle, Id. 5,533.]

[Cited in Brigham v. Claflin, 31 Wis. 609.]

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

8. Bona fide liens under the state laws are valid under the bankrupt law; and a state court may enforce such liens.

9. But if there be fraud in the creation of such liens, and the creditors, through the assignee of the bankrupt, seek to set the liens aside, the district or circuit court of the United States affords the appropriate jurisdiction.

[Cited in Clarke v. Rist, Case No. 2,861; Smith v. Crawford, Id. 13,030.]

10. A state court, by the enforcement of a lien, cannot draw to its jurisdiction the administration of the bankrupt law.

[Cited in Beall v. Walker, 26 W. Va. 748.]

11. Where this effect will result necessarily from the exercise of jurisdiction, the circuit court may interpose by injunction, and stay proceedings in the state court. At least such interposition is proper until the cause can be heard on its merits.

12. A warrant of attorney to confess a judgment, the defendant being insolvent, executed within sixty days preceding the filing of the petition, by the bankrupts, cannot authorise the entry of a judgment.

13. Such judgment, if valid, would create a lien or security within the bankrupt law; and is void.

14. An execution issued on such judgment, though levied, creates no lien on the property levied on. The judgment being invalid, all the proceedings under it are equally so.

In bankruptcy.

Wright, Coffin & Miner and Brown & McLean, for complainant.

Chase & Ball, W. M. Corry, and Fox & Lincoln, for defendants.

OPINION OF THE COURT. This bill is brought by the assignee of John Mahard, Jr., and William Mahard, who are bankrupts, to stay certain proceedings in the state court against the property of the bankrupts. On their schedule the bankrupts returned a large amount of real estate, and also personal property; but the defendants, who are numerous, set up various liens under mortgages, judgments, and levies by execution; and these liens are brought into the state court, to be there investigated. Large as the real estate of the bankrupts is, the liens, should they be established, will exhaust it, to the exclusion of a large class of creditors who have proved their claims under the bankrupt law. The complainant represents that the above liens were all created and obtained in fraud of the bankrupt law; and he prays that the defendants may be enjoined from further proceeding in the state court; that their liens may be set aside as fraudulent; and that the property of the bankrupts may be brought into the bankrupt court, to be distributed according to law. An injunction was allowed on filing the bill, and a motion is now made in behalf of the Lafayette Bank and the Buckinghams, to dissolve the injunction. Many if not all of the other defendants are desirous of having the matters of controversy brought into this court. The mortgage to the Lafayette Bank by the bankrupts was signed the 7th December, 1841, and ac-

knowledged and recorded the 13th January, 1842. At October term, 1842, a decree for a sale of the premises was entered by the superior court. The petition under the bankrupt law was filed by the mortgagors the 27th May, 1842. and a decree of bankruptcy was made the 20th of July ensuing. The assignee of the bankrupts, and others who claimed an interest in the mortgaged premises. were made parties to the bill filed by the Lafayette Bank; but the assignee made no answer, nor in any form submitted to the jurisdiction of the court. On the 7th April, 1842, a warrant of attorney was executed by the bankrupts to William M. Corry, Esq., authorizing him to confess a judgment against them in favor of J. S. and M. Buckingham, for a sum exceeding fourteen thousand dollars. This was done at the urgent request of the Buckinghams, and it is agreed, that, at the time. the Mahards were insolvent. On the 8th April, a judgment was confessed, and on the 21st of the ensuing month. execution having been issued, a levy was made on certain personal property, which was afterwards sold, by consent of parties, under the order of the superior court acting as a court of chancery. The proceeds of the sale were brought into that court to be disposed of as it might direct. And it appears that an injunction. which had been previously granted by the superior court to restrain the Buckinghams from proceeding on their execution, was dissolved. From this decision there was an appeal to the supreme court of the state, which continues the injunction.

On the part of the Lafayette Bank, it is contended that this court has no jurisdiction; that the decree of the superior court for the sale of the mortgaged premises is final and conclusive on all parties; that, jurisdiction having attached to that court by the filing of the bill to foreclose the mortgage, it may examine and determine all questions arising under the bankrupt law; and that, as process was served on the assignee, he was a party to those proceedings. On the other hand, it is contended by the assignee, that the mortgage was executed by the bankrupts in contemplation of bankruptcy, to give a preference to the bank over other creditors. and that the mortgage is void under the bankrupt law. The second section of this law provides, "that all future payments, securities, conveyances, or transfers of property. &c., given by any bankrupt in contemplation of bankruptcy, giving any creditor, &c., any preference in priority over the general creditors of such bankrupt, shall be void. And the assignee shall ·be entitled to claim, sue for, recover, and receive the same as part of the assets of the bankrupt." In the same section. it is declared. that "all the property and right of property of the bankrupt, by operation of law. is vested in his assignee; and the assignee is vested with all the rights, powers,

&c., in and over the property 'which the bankrupt had before or at the time of his bankruptcy, declared as aforesaid.'." In the sixth section, it is provided that, "the jurisdiction of the district court shall extend to all cases and controversies in bankruptcies arising between a creditor and the bankrupt, and between such creditor and the assignee." And. in the eighth section, concurrent jurisdiction is given to the circuit court, with the district court, "of all suits at law and in equity. which may or shall be brought by any assignee of the bankrupt against any person or persons claiming an adverse interest, or by such person against such assignee, touching any property or right of property .of the bankrupt, transferable to or vested in such assignee." The jurisdiction vested in this court, under these sections, is ample, and reaches every possible controversy which can arise, in the collection and distribution of the effects of the bankrupt. Of whatsoever nature his rights may be, the assignee may invoke the jurisdiction of this court for relief. But he may do more than this. He is not only vested by the law with all the rights of the bankrupt, but with the rights of creditors also. He may set aside a fraudulent conveyance of the bankrupt, which the bankrupt himself could not do. In this respect the assignee represents the general creditors. And in this aspect he stands in the present case.

It is presumed that no one will doubt the powers of congress to confer this jurisdiction. The power "to pass uniform laws on the subject of bankruptcies throughout the United States," is given in the constitution, and belongs to the same class of powers, "as to regulate commerce, establish a uniform rule of naturalization, coin money, establish post-offices and post roads, and to declare war." These. in my judgment, are all exclusive powers. It is true. the supreme court have held that a state may pass a bankrupt law, to operate upon all contracts subsequently made within the state. But I cannot comprehend the principle on which this ,decision rests. No state can impair the obligations of a contract. That a release, under a bankrupt law, from a contract, does impair its obligation, no one will deny. How can a state exercise this power by any supposed assent of the parties to the contract. Does such a law become a part of the contract. and is the power, therefore, constitutional? This would be a ready, if not a safe mode. of acquiring power by a state, to do that which the federal constitution inhibits. It has been held that the assent of a state enlarged the federal power. so as to enable it to make a turnpike road or other improvement through the territory of a state, which, without such assent, would be unconstitutional. These positions, it seems to me, are equally erroneous. In neither case can the power be derived from the assent or contract of a state or individuals.

The obligation of a contract is as much impaired by a bankrupt law which operates upon future, as upon past contracts. The power is inhibited. Can a state, by the passage of a law, enlarge its constitutional power? Can it say that no contracts shall be made in future, which may not be impaired, under its bankrupt law? Nothing can be more unconstitutional than the notion, that the power vested in the federal government, which, from its nature, must be exclusive, can be exercised by a state, until the same power is exercised by congress. Such a conception seems to me to border upon the ludicrous. I see a state, like the holder of a floating land warrant, hunting among the federal powers for some vacant spot on which to rest, as a temporary occupant; and which must be abandoned as soon as a notice is served on it to quit. A state acts upon its own inherent sovereignty, and upon no such impracticable notion.

The bankrupt power, from its nature, must be exclusive. It must be uniform. A system of bankruptcy has been adopted, and its details are spread out in this act. And summary and extraordinary powers are given to the courts of the United States, to carry out and give effect to this system. This power cannot be exercised by the state courts. Their powers are derived from different sovereignties, to whom they are amenable. Congress had not the power to impose this jurisdiction on the state courts. They have not attempted to do so. Congress have adopted the state laws that relate to the practice of the courts; but the courts of the United States have decided that they cannot execute the insolvent laws of a state. Their organization does not admit of the exercise of the powers necessary to give relief under these laws. The objection is much stronger against a state court giving relief under the bankrupt act. The power belongs to the federal government exclusively, both as regards the enactment of the law and giving effect to it.

Mortgages and all bona fide liens under the laws of a state, and not in fraud of the bankrupt law, are declared to be valid. And the question is asked, have not the state courts power to enforce these liens? The answer may be in the affirmative, but subject to some restriction. The mortgage under consideration, if the allegations of the bill shall be sustained, may constitute one of the exceptions to the rule. That the mortgagee might have filed his bill to foreclose in the circuit court, seems to be clear. The assignee is a necessary party, and the law gives jurisdiction to this court "in all cases between a creditor and the assignee." But he may not have been compelled to sue in this court. Some doubt, however, may be entertained, whether the assignee, being an officer of the law, and bound to discharge his duties under the special direction of the court, should be subjected to any other jurisdiction. He has an undoubted power to redeem the property by paying off the mortgage, and he is entitled, in behalf of the creditors, to the surplus. If the assignee may be drawn into the state court on one lien, he may be so treated in all cases of liens. The present case affords a fit illustration of the principle. Some twelve or fifteen liens are set up on the property of these bankrupts. The property is large and valuable. And the validity of almost all these liens depends upon the construction of the bankrupt law. The entire property of the bankrupts will be absorbed in this way. Now, if this be a rightful exercise of jurisdiction by a state court, although the bankrupt law be uniform in its provisions, it cannot be so in its effects; a state court may hold the act or a part of the act to be unconstitutional. That a uniform construction shall be given to the act, under such an administration of it, is not to be expected. And if this be a proper exercise of jurisdiction, there can be no revisory power in the courts of the United States. There certainly can be none, unless it shall be under the 25th section of the judiciary act of 1789 [1 Stat. 85], to review a decision of the supreme court of the state. This would be a most dilatory and ineffectual mode of executing the bankrupt act; a mode, certainly never contemplated by congress.

On general principles, a state court has an undoubted right to determine a question arising under a law of the United States. This, however, is subject to the revisory power of the supreme court of the United States, as above stated. But questions which involve the efficacy of the bankrupt law, and are essentially connected with its uniform administration, it would seem cannot be brought under the same rule. No light is shed upon this question by the action of the English courts. They all form a part of the same system, and derive their powers from the same sovereignty. Here the judicial power is exercised under different sovereignties, having appropriate powers to give effect to the laws. Under the bankrupt law of 1800 [2 Stat. 19], I am aware, that this jurisdiction, to some extent, was exercised by the state courts. I have not compared that act with the one under consideration, to see whether its provisions in this respect, were different from the present act.

But the question in the present case, does not depend upon the ordinary exercise of jurisdiction by the state courts, for the enforcement of liens against a bankrupt. The complainant in his bill alleges that all the liens involved in this controversy, were given in fraud of the bankrupt act. Every creditor of the bankrupts is interested in this case. If the supposed liens are void, the property of the bankrupts will be distributed among the creditors generally; but if they are valid, the general creditor can receive nothing. And whether these liens are valid or not,

must depend upon the construction of the bankrupt act. Shall these questions be drawn into the state court, and there decided? From the time of filing the petition, by relation, the property of the bankrupts became vested in the assignee. As before remarked, he not only represents the interests of the bankrupts, but the interests of the creditors also. The interests of those who have special liens can as well be protected in this court, as in the state court. They are protected by the law. Why then should the fact of special liens draw this whole controversy into the state court, and take it from the appropriate jurisdiction; a jurisdiction specially provided and vested with all the necessary powers to make a final decision in the case. This the state court cannot do. Should it undertake to determine the validity of the liens under the bankrupt law, and their priorities, still if there be a surplus, it must be handed over to the assignee to be brought into the bankrupt court, for distribution among the creditors. These creditors, through the assignee, are parties in this court, and by its decree the validity of the liens under the bankrupt act, their priorities, and the distribution of the surplus, can all be finally adjusted.

The bankrupt power overrides the contract and puts an end to it. And had there been no reservation in behalf of bona fide liens, they, with other contracts of the bankrupts, would have been abrogated. Shall this exception in the law, in effect, take, at the pleasure of the mortgage creditor, the administration of the bankrupt law into the courts of the state? This would be a matter of little importance in a case free from all difficulty. But where the foundation of the liens depends upon the continuation of the bankrupt act, it would seem, the jurisdiction under which the law was passed should carry it into effect. And this view acquires force from the fact, that the creditors, who are deeply interested in the case, have invoked the powers of the bankrupt court, by proving their claims. And the assignee, their agent, calls specially on the court to interpose its powers and protect the interests committed to it. Has it power to do so? If it has not, there is a great and radical defect in the system. Over the action of the state court the federal court can exercise no control. A foreclosure may be decreed, and so short a time allowed for the payment of the money, as to be unavailing to the assignee. Or the state court may order the sale of the premises, which, of course, must be under the law of the state which requires improved property to sell for two-thirds of its value. And unless the mortgagee shall purchase the property, it may not sell for many years. A connivance between the bankrupt and the mortgagee may, in this manner, keep from his creditors his whole estate. It may be said that the equity of redemption may be sold, under the order of the bank-

rupt court. But would that court order the sale of the equity of redemption, unless the parties interested were brought before it, and the extent of the liens were judicially ascertained? The district and circuit courts are vested with full chancery and common law powers, to act in all cases arising under the bankrupt law. They possess, in this respect, all the powers of the English common law and chancery courts, over questions of bankruptcy. And is not this jurisdiction exclusive? I am aware that the argument ab inconvenienti, is not a legitimate ground of jurisdiction. But in a case like the present, can it be disregarded? Our system of sovereignties is extremely complicated. The state and federal powers, like the colors of the rainbow, are found to intermix, and it may be sometimes difficult, if not impracticable, to determine the exact limit of either. And when this is the case, what is there but the argument ab inconvenienti to lead the judicial mind to a just conclusion? This, and this only, under the exercise of an enlightened forbearance, can preserve the harmony and efficiency of our system.

It has been shown that the federal court possesses a perfect jurisdiction over all the interests involved in the present case. That the parties are now before it. That the state court has but, at most, a jurisdiction over a part of the case. That it cannot enter a decree that shall settle the conflicting interests of all concerned. In principle, the case seems not to differ from an application to the federal court to discharge a defendant from imprisonment, under the insolvent laws of a state. Such laws generally provide, that on filing his schedule of property under oath, and giving security, he shall be discharged from imprisonment. But the federal court has uniformly refused such applications, on the ground that it could not carry out and give effect to the insolvent law. The act of bankruptcy brings into the bankrupt court, all the interests of the bankrupt. And it seems to be reasonable that that court should exercise an exclusive jurisdiction over those interests. It is no sufficient reason against this jurisdiction, that other interests arising under liens are involved. Those interests are valid under the bankrupt law, being excepted out of its operation, and will be protected by the bankrupt court. But do not those interests necessarily follow the property into the bankrupt court, where it is drawn by the act of bankruptcy? In overruling the motion to dissolve the injunction, as to the Lafayette Bank, the question of jurisdiction is not finally decided. It may again be discussed and considered on the final hearing. It is enough now to say, that from the allegations of fraud in the bill and other circumstances which have been adverted to, the court will not now dissolve the injunction on the ground that it has no jurisdiction of the case. The answer denies, generally, the allegations of the bill; but so complicated are the numer-

ous interests involved, that the continuance of the injunction until the final hearing, seems to be required. The motion to dissolve the injunction, as regards the interest of the Lafayette Bank, is overruled.

The lien set up by the Buckinghams will be now considered. The warrant to confess the judgment was dated the 7th of April, 1842, and judgment was confessed under it the day following. On the 21st of May, ensuing, the execution was levied. The petition of the bankrupts was filed the 27th of May, and a decree of bankruptcy entered the 20th of July. The proceeding of the Buckinghams is void, it is insisted, under the second section of the bankrupt act, which provides, "that all future payments, securities, conveyances, or transfers of property, or agreements made or given, by any bankrupt, in contemplation of bankruptcy, and for the purpose of giving any creditors, &c., any preference or priority over the general creditors of such bankrupt, shall be void, &c., and the assignee shall be entitled to claim, sue for, recover, and receive the same as part of the assets of the bankruptcy." The warrant of attorney, judgment, and levy of the execution were within two months preceding the filing of the petition; and it is admitted that the Mahards were insolvent at the time the warrant of attorney was given. The only question, then, is, whether this proceeding was void, under the above section.

It is contended that the warrant of attorney is not a security or an agreement within the act. This may be admitted; and, if nothing had been done under the power, the argument would have been unanswerable. But is not the act of the agent, thus constituted, the act of the principals? This will not be denied. The Mahards, then, being insolvent, and within less than sixty days before their petition was filed, by their agent specially constituted for that purpose, confessed a judgment in favor of the Buckinghams for an amount exceeding fourteen thousand dollars. A judgment is a security paramount to all other liens of a subsequent date. If valid, it constitutes a lien within the bankrupt act. But is this a valid judgment? The second section of the act provides, "that all dealings and transactions by and with any bankrupt bona fide made and entered into more than two months before the petition filed against him, or by him, shall not be invalidated or affected by this act." This, by the strongest implication, declares that any transaction of the above nature, "made and entered into" less "than two months before the petition was filed," shall be void.

But strong and unanswerable as this position seems to be, there is another, if possible, still more conclusive. The warrant of attorney was given, and the judgment confessed, in contemplation of bankruptcy; and if so, the judgment is void, under the bankrupt act; not that it is necessary to show

the Mahards, at the time the judgment was confessed, had determined to apply for the benefit of the act; but they were in an acknowledged state of bankruptcy; and this, from the circumstances, must have been known to the Buckinghams; and hence their great solicitude to procure the confession of the judgment. It does not follow that all judgments obtained within two months before filing the petition, are void. A suit commenced in the ordinary mode of proceeding, and prosecuted to judgment, the judgment, though entered within the sixty days, may constitute a valid lien. Whether such a judgment, therefore, be void or not, must depend upon the circumstances under which it is obtained. As regards the judgment of the Buckinghams, it seems to come within the law, not only as to time, but as to the circumstances which invalidate the transaction.

But it is contended that the lien now under consideration arises from the levy of the execution upon the personal property of the Mahards, which is not within the law: that such a lien is procured from the operation of law, and not from the act of the party. Of what value is the levy, if the judgment be void under the bankrupt act? If the judgment fall, can the levy stand? The argument, that if the judgment were inoperative as a lien, under the bankrupt law, still it is a judgment on which the execution may issue, and a valid levy be made, is more specious than sound. It may be admitted that the judgment may not be void for all purposes; but if it be void, as confessed, in contravention of the bankrupt act, the same principle must invalidate the proceedings on the execution; for such proceedings are equally in contravention of the policy of the act as the confession of the judgment. Indeed, it is a violation of the very letter of the act, by "procuring an execution to be levied." But the judgment, if void under the act, is void for all purposes. No valid rights can arise under it. It is as inoperative as would have been a mortgage or other security given under the same circumstances.

As before remarked, the overruling of the motion to dissolve the injunction will not preclude the party from taking the same ground on the final hearing. The motion to dissolve the injunction, in regard to the money for which the personal property was sold, claimed by the Buckinghams, is overruled; and the cause is continued.

[NOTE. The case was subsequently heard upon demurrer to an amended bill filed by the complainant. The demurrer was overruled. Case No. 8,886. It was again heard upon motion of complainant to appoint a receiver to take charge of a farm, part of the real estate alleged to have been fraudulently conveyed. The motion was allowed. Id. 8,887. It was then heard upon the question of the validity of the transfers alleged to be fraudulently made by the bankrupts. Some of these were held to be invalid. Id. 8,888. Finally it was heard on exceptions to the master's report, which exceptions were overruled. Id. 8,889.]