CHARLES F. BENTLEY

*v.*

SAMUEL WELLS.

1. CHATTEL MORTGAGE—*bankruptcy.* Under the bankrupt law, a chattel mortgage remains unaffected by the application of the mortgagor for, and his obtaining a discharge in bankruptcy; and, notwithstanding such bankruptcy, the mortgagee, when the debt falls due, may take possession of the mortgaged property as he could of his own temporarily in the possession of the bankrupt. The assignee in bankruptcy only takes the equity of redemption. The lien and the right to assert it remain unimpaired.

2. SAME—*when invalid.* Where a person, unable to pay his debts, borrows money and gives a chattel mortgage to secure its payment, although the mortgagee knows the fact, that will not invalidate the mortgage. To have that effect the mortgagee must know that the mortgagor was executing it

in contemplation of bankruptcy, and with a view to prevent its going into the hands of the assignee, and from being distributed among his creditors. This is the only reasonable and just construction that can be given to the bankrupt law.

APPEAL from the Circuit Court of Whiteside county; the Hon. WILLIAM W. HEATON, Judge, presiding.

Mr. O. F. WOODRUFF and Messrs. EUSTACE, BARGE & DIXON, for the appellant.

Mr. C. J. JOHNSON, for the appellee.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

We held, in *Cole* v. *Duncan,* 58 Ill. 176, that a petition in bankruptcy by a mortgagor, and a decree declaring him a bankrupt, would not prevent the State courts from taking jurisdiction of a bill to foreclose a mortgage. A similar question is presented by this record. Here, the mortgagee of personal property took possession, under his mortgage, of the mortgaged property, and the assignee in bankruptcy brought against him this action of replevin. The mortgage was made by one Lincoln, September 28, 1868, and on the 18th of December thereafter Lincoln filed his petition in bankruptcy. The mortgage was given to secure the payment of money loaned.

The 14th section of the bankrupt law, after providing that the judge or register shall, by an instrument under his hand, assign and convey to the assignee all the property of the bankrupt, excepting certain property therein exempted, reads as follows: "*And provided, further,* That no mortgage of any vessel or of any other goods or chattels made as a security for any debt or debts in good faith and for present consideration; and otherwise valid and duly recorded pursuant to any statute of the United States or any State, *shall be invalidated or affected hereby.*"

This language is certainly sufficiently explicit. The mortgage was not "invalidated or affected" by the subsequent proceedings in bankruptcy, and when the debt secured by it became due, the mortgagee had the same right to take possession of the mortgaged property that he would have had to take possession of his own if he had had any temporarily in the custody of the mortgagor at the time of filing the petition. The assignee in bankruptcy took only the equity of redemption. The lien of the mortgagee remained unimpaired, as did also his right to assert it in any legal manner.

We have not access to the cases cited in Bump on Bankruptcy, from the Bankrupt Register, but if any of them hold a different doctrine from this, we should decline to follow them.

It is further urged by the appellant that the mortgage was invalid because the mortgagor was insolvent when he made it, and this fact was known to the mortgagee. But to render the mortgage void, insolvency alone, and the knowledge of it on the part of the mortgagee, are not sufficient. It is also necessary, under the 35th section of the act, that the mortgage should be made "in fraud of the provisions of this act," and that the mortgagee should have reasonable cause to believe that such was the object of the mortgagor.

The first clause of the section relates to transfers of property made with a view to give a preference between creditors, and "in fraud of the law," and avoids the transfer, if made within four months before filing the petition. The second clause avoids all transfers, including sales made six months previous to the petition, in contemplation of insolvency, with a view to prevent the bankrupt's property from coming to the assignee, or to defeat in any way the object of the act. This clause, however, like the other, requires, in order to avoid the transfer, not only the fraudulent intent on the part of the grantor, but that the grantee should have reasonable cause to believe in the existence of such intent. This is the express provision of both clauses of the section, and the only reasonable construction it can receive is that the grantee or mortgagee

should have reasonable cause to believe that the grantor or mortgagor intends to avail himself of the bankrupt act, and that the transfer or mortgage is made for the purpose of preventing the distribution of his property required by that act, or at least that such is one of his purposes.

It would be very unjust, and would greatly embarrass the operations of trade, if it should become the settled construction of this law that every sale of property, even for a full consideration, and in the utmost good faith, or every mortgage in equal good faith, must be held void because the vendor or mortgagor is known at the time to be in straightened circumstances, and within four months thereafter petitions to be declared a bankrupt. This can not have been intended by the framers of the bankrupt act, and the language of the act justifies no such construction. A sale or mortgage, otherwise unobjectionable, is not avoided by a subsequent bankruptcy, unless made in fraud of the act, or, in other words, with a view of seeking the benefits of the act, and at the same time defeating its requirements, and the vendee or mortgagee must have reasonable grounds for believing in the existence of such fraudulent intent. This fraudulent intent is not shown merely by the subsequent bankruptcy, and the fact that the bankrupt was, at the time of the sale or mortgage, unable to pay his debts, and that the vendee or mortgagee had good reason to know that fact. That is all that is shown in this case.

If the framers of the law had intended this proof alone to be sufficient—if the fraudulent intent is to be inferred, as a legal presumption, from the mere proof of insolvency, and a reasonable knowledge thereof—why did they require, in addition to these facts, the existence of a fraudulent intent, and that the mortgagee should have reasonable cause to believe in its existence? Why speak of fraudulent intent at all? No reason can be given. As they required both facts to be proved before avoiding the transfer, it is impossible for us to believe they intended one fact to be inferred as a legal consequence

from the existence of the other. When a statute provides that a certain result shall follow from the proof of two defined facts, the courts have no right to say the result shall follow merely from the proof of one. This is making, not construing, a statute.

The same construction must be given, in this respect, to the second clause of the section as to the first. That the act should declare void a sale, even for full consideration, if made to prevent the property or its equivalent from coming to the assignee in bankruptcy, we can well understand. Such a sale would be in fraud of creditors. But we can not hold that the purchaser of property in good faith is liable to have it taken from him by an assignee in bankruptcy merely because he had good reason to know, at the time of the purchase, that the vendor was unable to pay his debts, and because the vendor does, within six months, file a petition in bankruptcy. Men may be practically insolvent, that is, unable, with the property then owned by them, to pay their debts, and suspected to be so by the community, and yet continue in business, with no expectation of going through bankruptcy, but laboring on the contrary to retrieve their circumstances, and often succeeding in the effort. Yet, the construction contended for would practically condemn every such man to bankruptcy, since no purchaser from him could be secure of his title, and no creditor could take a mortgage from him and extend the time of payment of his debt with any confidence that his security would not be taken away. The injustice and impolicy of such a construction are very apparent.

We find no error in this record.

*Judgment affirmed.*