# William T. Voorhies, Assignee of William C. Bennett, a bankrupt, v. Abijah H. Frisbie and another.

*Bankruptcy: Bill in equity: Jurisdiction.* A state court has no jurisdiction of a bill in equity, filed by an assignee in bankruptcy, to set aside a conveyance made by a bankrupt, in fraud of the bankrupt act.

Courts of equity must have complete control over all matters in controversy, directly, or by coercion of the parties, and where this does not exist, as in the case of an assignee, jurisdiction will be denied.

In suits that can only be maintained under the bankrupt act, the United States courts have exclusive jurisdiction.

*Heard July 13. Decided October 15.*

Appeal in Chancery from Clinton Circuit.

*Spaulding & Cranson* and *D. C. Holbrook*, for complainant.

*Walbridge & Selden*, for defendants, were stopped by the court.

CAMPBELL, J.

The bill in this cause was filed by an assignee in bankruptcy, to set aside a conveyance alleged to have been made by the bankrupt in fraud of the bankruptcy. By some apparent misunderstanding, the defendants' default was taken, and the circuit court, acting within a discretion which we cannot review, refused to open it. The case, therefore, comes before us on the sufficiency of the bill.

The bill would be fatally defective under any circumstances not dependent on the bankruptcy proceedings. It is not only entirely lacking in direct allegations which would make out a fraud against creditors, but it does not show that any creditor had taken such steps as would—apart from the bankrupt law—give him any right to com-

plain of the fraud, if existing. The only question presented, is, whether the assignee in bankruptcy could resort to the circuit court of Clinton county, to obtain relief against a conveyance alleged to have been made in fraud of that statute.

It cannot be questioned that the bankrupt law is as binding in one court as in another, and a title obtained by valid proceedings under it, must be respected. In private hands it would be, like any other vested right, enforced in any court having cognizance of such property rights, without any necessary regard to its origin, as a land title derived from a patent, for purposes of jurisdiction, stands on the same footing in all courts, in real actions, with a private grant or inheritance.

But the right of an assignee in bankruptcy to apply to a state court to have a conveyance set aside as fraudulent, is claimed by defendants to stand on different grounds, and we think correctly.

The fact that the fraud charged is not a fraud against our state laws, is not decisive. It is not uncommon to seek redress in a forum where parties can be found, for actual frauds committed elsewhere, not being merely statutory. And as the bankrupt law must bind all tribunals in this country, acts committed against it could not be recognized as lawful, whether affirmative relief could be granted against them or not. The difficulty arises from other considerations, involving the danger of a conflict of jurisdictions, if state courts should attempt to adjudicate upon the peculiar class of cases to which the present controversy belongs. Upon cases not involving similar difficulties, we express no opinion.

By the first section of the bankrupt act, the courts of the United States are vested with very full and complete jurisdiction, not only to determine the liabilities of the

bankrupt, but also to try the conflicting claims of all parties, debtors and creditors, to provide for collecting all the assets, ascertaining and liquidating all liens, and regulating every thing necessary to be done in the premises until the proceedings are closed. The second section also makes express provision for suits at law, or in equity, brought by the assignee against any person claiming an adverse interest.

In *Ex parte Christy, 3 Howard, 292,* the plenary power of the courts of the United States, under similar authority of the bankrupt law of 1841, was very thoroughly discussed, and in some cases, at least, jurisdiction was asserted, to control parties litigating in state courts; an interference not lawful in ordinary cases, and which depends on the exclusive character of the bankruptcy power, vested in the general government under the constitution. No express decision was made as to whether the jurisdiction of the United States was exclusive, and in a subsequent case, in the same volume, that point was also reserved.—*Norton's Assignee v. Boyd, 3 Howard, 426.* It would make no great difference in those courts, whether action should be had in the state courts or not, when they have so large a control over the litigants as practically to reach the proceedings. But it is a very serious question, whether an independent court can be said to have jurisdiction, when subject to such interference; and quite as serious a question, whether it is proper to exercise it, if theoretically existing.

It cannot be doubted, that there is power in congress to make jurisdiction exclusive over suits arising under the laws of the United States, where the proceeding is a direct one to enforce peculiar rights originating under the statute, and not within any other law. The right to assail the conveyance in question, is purely statutory, upon the case made by the bill. It is also in the nature of a penal enactment, in creating a forfeiture and disability enforceable in

favor of the assignee. It is generally understood to be settled law, that no court will take jurisdiction for the sole purpose of enforcing the penal consequences imposed by any other authority which has its own courts to enforce them.—*The Antelope, 10 Wheat., 67.* It was held in *Gelston v. Hoyt, 3 Wheat., 246,* that a state court cannot lawfully assume any such jurisdiction under the laws of the United States. In those cases where it is loosely said there is a concurrent jurisdiction over certain crimes, it is only because the same act may violate the laws of both jurisdictions. Thus, in *Fox v. Ohio, 5 Howard, 410,* it was held, that passing counterfeit money might be thus punishable, but it was never supposed that a state could punish it under an act of congress, or as any thing but a state offense. We have refused to enforce the penalties of foreign usury laws not avoiding the contract, although if the contract was absolutely void where made, it would not be held valid anywhere.—*Collins Iron Co. v. Burkam, 10 Mich., 283.* And thus far, at least, the penalties and disabilities under the patent, and copyright, and navigation, laws have not been understood to fall within the cognizance of state courts, although the language giving jurisdiction to the courts of the United States is no more exclusive than that of the bankrupt law. Yet contracts concerning the transfer of such property are cognizable in all courts, like other property contracts.

We think the purpose of the present action is directly to aid in the administration of the estate of the bankrupt, and that the bankrupt law regards these proceedings as a part of the course which should be within the control of the courts having jurisdiction under the statute. If a state court should affirm the title of the defendants, and deny the claim of the assignee, there is no appellate resort except to the United States supreme court. If we have jurisdic-

tion, our judgment must be valid till reversed.    But it can hardly be supposed that it was designed that summary proceedings should be subject to such long delays, and that the settlement of the estate should be retarded by resort to courts of another jurisdiction.    The inconvenience of such a course has, we think, a decided bearing upon the construction which the statute itself requires.    If this bill had been filed by defendant to quiet title against the assignee in bankruptcy pending bankrupt proceedings, the want of jurisdiction would not be disputed.

The conditions on which state courts can, in the absence of any distinct restriction, exercise concurrent jurisdiction with courts of the Union, have never been clearly defined, and perhaps cannot be.    So far as any general doctrine is laid down, it seems to indicate that state courts may, where not otherwise restricted, exercise jurisdiction over cases where they might have done so independent of the constitution and laws of the United States, but that they can exercise no new powers wholly dependent on, and conferred by, statutes of the United States.—*1 Kent Com., 397.*    Or, as well expressed by the supreme court of Massachusetts, " the jurisdiction is in such case exercised, not upon the ground of a judicial authority conferred, as such, by a law of the United States, but as the ordinary jurisdiction of the state court; acting indeed, in the particular case, upon legal rights which may have been created, or materially affected, by the legislation of congress."—*Ward v. Jenkins, 10 Metc., 583.*    This case also distinguishes between the right to sue upon contracts and other rights in common-law form, and the right to enforce statutory penalties and disabilities, which it holds not within state authority, and cites cases on the subject.

We do not deem it necessary to consider, for the purposes of this case, to what extent assignees may sue, at law,

on the same footing, and with the same rights, as private persons, to recover upon contracts or legal liabilities, or in equity, to enforce such liens and obligations as involve the same kind of interests. No such difficulties would arise at law as may arise in equity, and it may be there are classes of equitable proceedings which could raise no complications. The present case is one where no cause for equitable interference could exist in this state, in favor of private parties, upon the facts alleged. No creditor, who has not obtained a lien or judgment, and who has not, in seeking to enforce that lien or judgment in the ordinary way, found it necessary to assail the conveyance of his debtor's property as fraudulent, can complain of it. And a transfer for a valuable consideration, and in good faith, though made by a person known to be insolvent, would not, in the absence of a bankrupt law, be necessarily void as against any one; as it would not necessarily impair the rights of creditors. Our laws have never prohibited honestly-made preferences. The rights of assignees under the bankrupt law, rest largely on new and purely statutory grounds. And where a sufficient power exists in the courts of the United States, not only to enforce those rights, but to do it more conveniently and effectually, in connection with the administration of the whole estate, there is no necessity, and we think no propriety, that we enlarge our own jurisdiction to interfere directly in matters beyond our full control.

The peculiar advantages of equity jurisdiction depend almost entirely on the power of courts of equity to do full justice by a complete control over the matters in controversy, directly, or by personal coercion of the parties. The rule is almost universal, that no interference will be exercised unless this complete power exists to compel justice to be done throughout. Specific performance, which is one

of the commonest forms of relief, will seldom be granted where there is not a mutual liability to the jurisdiction, or where the court has not the means of seeing that its decree shall be carried out. It will not entertain a bill where it could not obtain the means of enforcing a cross-bill, if one should become proper, so as to compel both parties to do equity. In maintaining jurisdiction in favor of a foreign state, in *U. S. of America v. Wagner, L. Rep., 2 Ch. Ap., 582*, the English court of chancery maintained the jurisdiction, with the express assertion, that in case a cross-bill should be filed, proceedings should be stayed until the complainant in the original bill should submit to it. And in *U. S. of America v. McRae, Law Rep., 3 Ch. Ap., 79*, the principle was further recognized, that equities connected with the matter in controversy were entitled to be enforced. This doctrine is elementary, and is incident to equity jurisdiction.

In all controversies concerning conveyances alleged to have been made in fraud of creditors, it is competent, and generally necessary, to inquire into consideration and notice; and, under the rule in this state, there may be many cases where purchasers, not entitled to hold the entire title, may be protected in their partial payments, and authorized to demand repayment of moneys, and cancellation of securities; and, in some cases, to ask reconveyance of property, or re-assignment of obligations. There may also be a right to an accounting.

There certainly can be no jurisdiction in a state court to deal with a fund in bankruptcy, and direct the course to be taken by the assignee; and the assignee would have no power, in some cases at least, to submit himself to such a jurisdiction. There are some arrangements which he can make with the leave of the bankrupt court, but not without. His powers and duties, as prescribed by the

bankrupt law, would not permit any but the courts taking jurisdiction under the statute, to adjust all the equities by compulsion.

This, we think, is a conclusive objection to entertaining jurisdiction in such suits as the present, if the jurisdiction could properly be said to exist.   But it would be a misnomer to speak of such a jurisdiction as existing, and yet not plenary.   The constitution of our courts of equity, gives them no such hampered powers; and it would not be promotive of justice, if these limited powers had been given. They could not disregard the bankrupt law, without violating their legal duty, and they have not the means of controlling proceedings under it, which are necessary to prevent injustice otherwise resulting from the application of single clauses, or the separation of transactions, where all need to be administered by one set of tribunals.

We think the court below erred in granting a decree, and that the decree should be reversed, with costs of both courts, and the bill dismissed without prejudice to such other proceedings as complainant may be advised to pursue.

The other Justices concurred.