# CHARLESTON.

BEALL v. WALKER et al.

Submitted June 22, 1885.—Decided November 14, 1885.

1. After an adjudication in bankruptcy all the property of the bankrupt passes to the assignee, who takes it subject to all the liens and equities then existing against it. (p. 752.)

2. The bankruptcy-court has the right and the power to enjoin the prosecution of any suit thereafter instituted in a State-court to enforce any previous lien against the bankrupt's property; as it has the right to administer fully upon the estate of the bankrupt liquidating and settling all liens or ordering the property sold subject to the liens. (p. 752.)

3. When the bankruptcy-court orders the property sold subject to the liens, there is no reason why the State-court should not proceed to enforce the liens. (p. 752.)

4. Where neither the bankruptcy-court, the assignee nor any creditor objects, the State-court has jurisdiction to proceed with such suit to enforce the liens. (p. 752.)

5. The assignee should be made a party to such suit. (p. 752.)

6. The State-court but for the proceeding in bankruptcy has jurisdiction to enforce a lien against the land of a debtor, and if that jurisdiction is not ousted by the interference of the bankruptcy-court or proper pleading in the cause by the assignee or creditor of the bankrupt, the State-court may lawfully proceed to enforce the lien. (p. 752.)

7. The lien is by the Bankrupt Act expressly saved and respected; and while the bankruptcy-court has the undoubted right to enforce the lien itself and may by injunction prevent the State-court from the enforcement of it, yet by the active or passive permission of the bankruptcy-court the State-court may proceed with the enforcement of the lien. (p. 752.)

8. To obtain the benefit of *res judicata* it must be pleaded.   (p. 753.)

9. Where B. purchases a tract of land of W. and takes a general warranty-deed, and afterwards ascertains that judgments in favor of divers persons have been recovered and docketed against W., and to save his land from being sold to satisfy said judgment-liens B. pays off the judgments, he is entitled to be subrogated to the liens of such judgment-creditors against any other land owned by W.   (p. 753.)

10. Where a contract was made for the purchase of a tract of land, and the consideration was $800.00, and the vendor agreed to take as a part of the consideration a lot at $75.00, the title to which was in the infant-daughter of the vendee, and all the purchase-money had been paid except the lot, to which the grantee had no title, in a suit to enforce a lien against the land as the property of the vendee the court did not err in requiring the price of the lot, to-wit, $75.00, to be paid to the vendor instead of such lot. (p. 754.)

A statement of the facts of the case will be found in the opinion of the Court.

*W. S. Sands* for appellant.

No appearance for appellee.

JOHNSON, PRESIDENT :

In October, 1877, Beall bought of R. W. Walker a tract of 279½ acres of land in Gilmer county for $844.30, of which he paid $250.00 in cash and executed his two notes to said Walker for the residue of the purchase-money, one for $362.06 and the other for $232.24. On December 10, 1877, he paid the note for $362.06 ; and Walker executed a deed to him for said land with covenant of general warranty.   Beall afterwards ascertained that there were various judgment-liens on said land, to enforce which liens a suit in chancery was brought against said Walker and said Beall and others, and said land was decreed to be sold to pay said liens.   The said liens were as follows :   To Fleming and Bennett commissioners $254.19, with interest; to Thompson & Jackson, $174.57 ; to William Logan & Co. $264.45; to Prager & Epstein, $285.86 subject to a credit of $79.06.   The said Beall filed his bill in January, 1881, alleging these facts, and that he was compelled to pay, and did pay those several sums, in-

terest and costs, to save his land, and that after giving credit to said Walker for the last payment of purchase-money due, $232.24 with its interest, he had been compelled to pay to relieve his land $748.49, to which extent he insists that he is entitled to be subrogated to the liens of the said several judgments against any land said Walker may own. The bill charges that said Walker had bought of P. Hays and paid for a tract of 100 acres of land in Calhoun county and was entitled to a deed therefor ; that said defendant R. W. Walker claims that said land was paid for by his son J. M. Walker, and is owned by him; that the said R. W. Walker purchased said property in the name of his son J. M. Walker for the purpose of hindering, delaying and defrauding his creditors ; that said Walker was adjudicated a bankrupt on his own petition in 1878, and on January, 1880, William E. Lively was appointed assignee, but that no assets ever came into his hands, and that said Walker has never received his discharge in bankruptcy, and plaintiff is not precluded from prosecuting this suit. ˙ He prays that said 100 acres of land may be sold to pay said liens, and that plaintiff may be subrogated to the rights of said judgment-creditors, and for general relief.

Walker demurred to and answered the bill. He denies that the 100 acres of land is his, but avers that it was paid for by his son and is owned by him; that he, R. W., had bought a house and lot in Arnoldsburg, Calhoun county, of P. Hays, and gave him some personal property thereon, not more than $75.00 in value ; that he had become indebted to his son for about $700.00, borrowed money, for which he executed his note. After negotiations by both himself and son, J. M. Walker, they succeeded in securing the 100 acres of land, on which respondent now resides for the sum of $800.00, Hayes agreeing to take the Arnoldsburg house and lot at $400.00, which had become the sole property of his son, J. M. Walker, by reason of respondent's indebtedness to him, and the lot devised by James Shaw to R. J. Walker's infant-daughter Josephine, at $75.00, and the remainder in money which respondent believes has been paid by said J. M. Walker. He denies all fraud, &c.

J. M. Walker answered the bill and substantially agrees with his father as to the purchase of the 100 acres and claims

it as his own. He exhibits two notes purporting to have been executed to him by his father, one for $100.00 dated March 9, 1871, the other for $600.00, dated October 12, 1875; and two receipts to him purporting to be signed by Peregrine Hays, one for $275.00, dated December 10, 1877, and the other for $50.00 balance of purchase-money, dated January 22, 1878. He avers that the said tract of 100 acres is his; that he paid for it out of his own funds. He denies all fraud charged in the bill.

Depositions were taken, and the cause referred to a commissioner, who reported the liens, and that they had been paid by Beall, and that R. W. Walker owned the 100 acres of land, &c. The cause was heard on October 8, 1883, and the court decreed that R. W. Walker should pay to H. C. Beall $883.04 with interest; that Beall be subrogated to the rights of the lienors, whose liens he had paid; and that said 100 acres of land be sold, &c. From this decree J. M. Walker appealed. William E. Lively the assignee in bankruptcy of R. W. Walker, was made a defendant but did not answer.

It is here insisted by counsel for the appellant, that the State-court had no jurisdiction of the cause, and that this appears on the face of the bill. As far as this record discloses, this question of jurisdiction would present no difficulty but for the following allegation in the bill: "The said Robert W. Walker was on or about the 6th day of August, 1878, adjudicated a bankrupt upon his own petition before R. S. Northcott, register in bankruptcy at Clarksburg, and that on the 20th day of January, 1880, William E. Lively was appointed assignee of said Walker, but there are no assets in, or to come to his hands, all of which will more fully appear by reference to the proceedings had in the chancery cause of William Logan & Co. and others against Robert W. Walker and others, but that no discharge has been granted to said bankrupt; that the cause of action, upon which this suit is instituted, did not, as plaintiff is advised, accrue to him, until the decree aforesaid was discharged by him, as hereinbefore stated, which was long after the adjudication in bankruptcy aforesaid and that such adjudication in bankruptcy does not preclude the plaintiff from prosecuting this suit upon

and by reason of the breach of covenant of warranty contained in the deed from said Walker to him."

I will refer to a number of State and Federal decisions, to enable us to see whether, upon a demurrer to the bill by the bankrupt, the jurisdicton of the State court was ousted.  Under the bankrupt law, a lien against the bankrupt's property, and the right to enforce it remain unimpaired.  (*Bently* v. *Wills*, 61 Ill. 59.)  Where .a mortgager of real or personal property becomes a bankrupt, and the mortgagee does not sell the property under the direction of the bankruptcy-court, nor release or deliver up to the assignee in bankruptcy his claim on the property, the mortgagee cannot prove any part of his debt against the estate in bankruptcy.  A bankrupt is only discharged from such debts, claims, liabilities and demands as were or might have been proved against his estate in bankruptcy, and a discharge in bankruptcy is not a good plea in bar, except as to such debts as were or might have been so proved.  *Pierce* v. *Wilcox*, 40 Ind. 70.  The twentieth section of the bankrupt act was not intended to disturb the lien of the mortgagee except with his express consent and through the joint action of himself and the assignee in bankruptcy.  If the mortgagee desires to prove his debt and participate in the assets of the bankrupt, he can do so upon the release of his lien; but the option is with him.  (*Cole* v. *Duncan*, 58 Ill. 176.)  This was a suit to foreclose a mortgage. The defendant pleaded a discharge in bankruptcy, and the lower court held the plea sufficient and dismissed the bill. The appellate court reversed the decree holding as above.

In *Fehley* v. *Barr*, 66 Penn. St. 196, it was held, that the 20th section of the bankrupt law of 1867 expressly saves the lien of a judgment, unless indeed the judgment-creditor releases or conveys his claim to the assignee and is admitted to prove his whole debt.  He is entitled if he does not do so to proceed and realize whatever he can from his security and then come in and prove for the balance.  In *McCance* v. *Taylor*, 10 Gratt. 580, it was held that under the bankrupt act of 1841 the lien of a judgment was not defeated by the discharge of a debtor as a bankrupt, and that such a lien could be enforced in the State-court.  To the same effect is *Stoddard* v. *Locke*, 43 Vt. 574.  Under the same act it was

held that creditors, who had not proved their debts in the proceedings in bankruptcy, might institute suits to set aside fraudulent conveyances made by their debtor, before he petitioned for the benefit of the bankrupt law, and might impeach his discharge in bankruptcy on the ground of fraud or the willful concealment of his property or rights of property contrary to the provisions of the act of Congress; such suits being instituted more than two years after the decree of discharge in bankruptcy; that such suits might be instituted in any court, State or Federal, in which independent of the bankrupt act a suit might be properly brought against the bankrupt. (*Tichenor* v. *Allen*, 13 Grat. 15.)

In *Stuart* v. *Hines & Eames*, 33 Ia. 60, it was held, that after the filing of a petition in bankruptcy, which is followed by an adjudication, no valid lien can be acquired against the property of the bankrupt by proceedings instituted in State courts. In such case the assignee is not estopped from asserting his claim to the property by the fact, that he failed to appear and defend in place of the bankrupt in an action commenced in the State-court subsequently to the filing of the petition in bankruptcy. No such duty is required of the assignee. Of course a judgment against a bankrupt after the adjudication would not hold the property transferred to the assignee. If it would, the bankrupt law would fail in the object of its creation.

In *Douglas* v. *St. Louis Zinc Company*, 56 Mo. 388, it appeared, that suit was instituted in a State-court to enforce a mechanic's lien, after a petition to have the debtor adjudicated a bankrupt had been filed. The suit was defended on the ground, that the court had not jurisdiction. The plaintiffs offered to prove, that the bankrupt court had ordered the property, to which the lien attached, to be sold by the assignee, and that the property had been sold by the assignee subject to the plaintiff's lien, and the plaintiff was by the the bankrupt-court ordered to proceed in the State-court to enforce the lien. All this evidence was rejected by the court below, and all evidence tending to prove plaintiff's claim was rejected, on the ground that the State-court had not jurisdiction of the cause. The court by Voories, judge, said: "This was, we think, erroneous. We can see no reason, why

the court could not, after the property had been disposed of in the bankruptcy-court subject to the lien of the plaintiffs, and all the proceedings dismissed therefrom, proceed to try the cause and determine the rights of the parties."

In *Pindell's Assignee* v. *Vemont's Executor*, 14 B. Mon. 400, it was held, that upon a decree in bankruptcy being rendered all the rights, interests and choses in action of the bankrupt pass to the assignee; that, where by the terms of a mortgage the mortgager has the right to retain possession of the mortgaged property, the assignee in bankruptcy can not take it, until the mortgage-debts are extinguished; that an assignee in bankruptcy, who comes into the State-court by answer and cross-bill and submits his rights as assignee to be heard and adjudicated, is estopped to question the jurisdiction in the Court of Appeals.

In *Voorhies* v. *Frisbie*, 25 Mich. 476, it was held, that a State-court has no jurisdiction of a bill in equity filed by an assignee in bankruptcy to set aside a conveyance made by the bankrupt in *fraud of the bankrupt act*—also, that of suits that *can only be maintained under the bankrupt act*, the United States courts have exclusive jurisdiction.

In the case of *In re McGilton*, 3 Biss. 152, Drummond, judge, said: "It is sometimes the case, that creditors, who have judgments, proceed to sell the property covered by the liens of the judgments, where it has passed by law to the assignees; but the courts have uniformly held these sales invalid, if made without authority of the bankruptcy-court. If it be admitted, the court, where there are liens on the real property of the bankrupt, can order it to be sold free from the liens, to marshal the assets and pay off the liens, it is equally competent for the court to authorize the creditor to proceed in the usual way to collect his judgment, if that course seems best for the estate."

In the case of "*The Ironsides*," 4 Biss. 518, it was held, that a party having a maratime lien may even after the filing of a petition in bankruptcy by the owner seize the vessel under a libel in another district, and the latter court has jurisdiction to hear and determine the lien. In such case the assignee has the right to appear and be heard, and the court in bankruptcy should accept the determination of the court in

admiralty as to the validity and amount of the lien. The words in section one of the bankrupt act, extending jurisdiction "to the ascertainment and liquidation of the liens and other specific claims" upon the bankrupt's property, apply only to cases, where these liens or claims have not been previously determined by other competent tribunals. It was held under the bankrupt act of 1841, that *bona fide* liens under the State laws are valid under the bankrupt law, and a State-court might enforce such liens. But if there be fraud in the creation of such liens, and the creditors through the assignee of the bankrupt seek to set the liens aside, the district court or circuit court of the United States affords the appropriate jurisdiction; that a State-court by the enforcement of a lien can not draw to its jurisdiction the administration of the bankrupt law; that, where this effect will necessarily result from the exercise of jurisdiction, the circuit court may interpose injunction and stay proceedings in the State-court. (*McLean, assignee* v. *The Lafayette Bank et al.*, 3 McLean 185.)

In *Glenny* v. *Langdon,* 98 U. S. 20, it was held, that it is only through the instrumentalities of his assignees, that creditors can recover and subject to the payment of their claims the property, which the bankrupt fraudulently transferred prior to the adjudication, or which he conceals from and fails to surrender to his assignees; that assignees of the bankrupt are subject to the control and direction of the proper court, and it may for good cause shown compel them to take the requisite steps for the full and complete protection of the rights of the creditors. This is the case principally relied upon by counsel for appellant to show, that the State-court had no jurisdiction of this cause. But the principles there decided are undisputed and do not apply to a case like this. That case decided principles for the benefit of creditors generally and did not embrace a case, where the State-court was merely proceeding to enforce a lien against the bankrupt's estate which attached long before the commencement of the proceedings in bankruptcy.

*Mays* v. *Fritton,* 20 Wall. 414 is a case, in which after the adjudication in bankruptcy a mortgagee brought suit in a State-court to foreclose the mortgage, and it was held that when the consideration of a question is *prima facie* within the

jurisdiction and control of a State-court, such as determining to whom the surplus of a fund raised by the foreclosure of a mortgage belongs, if the person, who gave the mortgage, becomes bankrupt, and his assignee goes into the State-court, submits to its jurisdiction and no where asserts in any way the rights of the federal courts in the matter, he can not after taking his chances for a decree in his favor and suffering one against him raise in this Court the point of want of jurisdiction in the State-court.

In *Doe* v. *Childress*, 21 Wall. 642, it was held, that under sec. 14 of the bankrupt act an attachment, which under state-laws is a valid lien, laid *more* than four months before the proceedings in bankruptcy began, is not dissolved by the transfer to the assignee. And if such assignee, does not intervene (which in any such case he may do) and have the attachment dissolved or the cause transferred to the federal court sitting in bankruptcy, but on the contrary allows the property to be sold under judgment in the proceedings in attachment, the purchaser in a case free from fraud will hold against him ; that is to say, the assignee cannot attack collaterally such purchaser's title. In this case the Supreme Court approves the decision in *Kent* v. *Downing*, 44 Ga. 116, and *Gibson* v. *Green*, 45 Miss. 209, the substance of which, as quoted by the supreme court of the United States, is : "The assignee may on his own motion be made a party, if for no other reason than to have it properly made known to the court that the defendant has become bankrupt. He has also a right to move to dismiss the attachment. The adjudication of bankruptcy must be made known to the court in some authentic mode. It may be denied, and the State-court can not take notice of the judgments of other courts by intuition. They must be brought to the notice of the court, and this cannot be done without parties."

In *Eyster* v. *Gaff, et al.*, 91 U. S. 521, it was held, that, where the assignee in bankruptcy of a mortgagee is appointed during the pendency of proceedings for the foreclosure and sale of the mortgaged premises, he stands as any other purchaser would stand, on whom the title has fallen after the commencement of the suit. If there be any reason for interposing, the assignee should have himself substituted for the bankrupt or

be made a defendant on petition. A court cannot take judicial notice of the proceedings in bankruptcy in another court; and it is its duty to proceed as between the parties before it, until by some proper pleadings in the case it is informed of the changed relations of any of such parties to the subject-matter of the suit; that the jurisdiction conferred upon the federal courts for the benefit of an assignee in bankruptcy is concurrent with and does not divest that of the state-courts in suits, of which they had full cognizance.

In the case of *In re Iron Mountain Co.*, 9 Blatch. 320, it appeared, that after the filing of a petition, in which J. was adjudicated a bankrupt, and after the appointment of an assignee and the conveyance to him of all the estate of the bankrupt S. commenced a suit in a State-court to foreclose a mortgage on real estate of J. The district court after restraining the prosecution of the suit made an order dissolving the injunction and permitting the suit to proceed. The mortgaged premises were worth less than one half of the amount of the mortgage. The mortgage was given long before the bankruptcy of J., and there was no proof of the invalidity of the mortgage. On a petition of review by J. it was held, that the order of the district court was proper; that the district court has power to restrain the holder of a mortgage or other lien on the property of a bankrupt from enforcing such lien by suit, and when the value of the property exceeds the amount secured by the lien, or the amount or validity of the lien is in doubt, it is generally proper to do so. In that case Woodruff, judge, said:

"There is no doubt whatever of the power of the district court, in bankruptcy, to take administration of the entire estate, and ascertain and liquidate the liens thereon, and to restrain the holder of a mortgage or other lien from proceeding in any court to enforce such lien; and when the value of the property exceeds the amount secured by such mortgage, or lien, it will in general be proper to do so, in order to preserve to the assignee his right, secured by sec. 20 of the bankrupt law, to receive the excess in value, and release the right of redemption, or to sell the property, subject to the mortgage, or to invoke the power of the court to first liquidate and settle the amount of the lien. So it will be proper to

restrain the proceeding in any other court, where the amount or the validity of the lien is in doubt. This may often be necessary to the full protection of the general creditors, who are entitled to such protection in the court in bankruptcy, where they are to look for the fund to be distributed to them. In all such cases it would be the duty of the assignee, to apply to the court in bankruptcy to assist him in bringing all the assets into that court to be applied and disposed of according to the rights and interests of all concerned, whether holders of liens or general creditors. But where no advantage can result to the estate of the bankrupt, I see no reason why the court should interfere, when neither the assignee, nor any creditor invokes such interference, and it appears without, contradiction that the equity of redemption is of no value. There is no excess of value to be paid to the assignee on his releasing the right of redemption. There is nothing to be sold subject to the mortgage, which will yield anything; and any action of the district court, for the liquidation and settlement of the amount of the lien, and for the sale of the property to satisfy it, would be a mere expense to the estate, producing nothing."

In the case of *Reed* v. *Bullington*, 49 Miss. 228, Simrall, J. for the court, said: " There is no motive or reason why the assignee should interfere unless the property will yield a surplus after paying the lein debt." And the court held that where no action has been taken by the assignee or creditor to deal with the property in the bankruptcy-court, the State-court has jurisdiction to make the lien available.

In *Gibbs* v. *Logan*, 22 W. Va. 208, this Court considered the question, whether an attachment-suit instituted more than four months before the adjudication in bankruptcy could be prosecuted to judgment and satisfaction of the debt out of the attached property in the State-court notwithstanding the bankrupt proceedings; and we held, that such suit could be prosecuted.

The question here arises, whether a suit may be instituted after the adjudication in bankruptcy to enforce a lien acquired before, where there is no interference by the assignee or by the bankruptcy-court. The State-court will follow the decision of the Federal courts on the construction of the

bankruptcy-law. We are cited to a number of State-decisions, but they are in accord with the Federal decisions cited above. We fully admit, that after an adjudication in bankruptcy all the property of the bankrupt is transferred to the assignee, who takes the property, just as the bankrupt held it, subject to all the liens and equities then existing against it. The bankruptcy-court has the right and the power to enjoin the prosecution of any suit thereafter instituted in the State-court to enforce any previous lien against the bankrupt's property; as it has the right to administer fully upon the estate of the bankrupt, liquidating and settling all liens or ordering the property sold subject to the liens. When it orders the property sold subject to the liens, then there is no reason or decision which would prevent the State-court from proceeding to enforce the lien. When neither the bankruptcy-court, the assignee nor any creditor objects, the State-court has jurisdiction to proceed with such suit to enforce the lien. If it is known, that the debtor is a bankrupt, the assignee is a proper and necessary party to such suit to enforce the lien so that he may, if he chooses, object by proper pleadings to the State-court proceeding to enforce such lien; and if it fails to desist, he may then ask the bankruptcy-court for a restraining order. But he may see that the equity of redemption is worth nothing, that the lien will more than absorb the property to which it attaches; and he may choose therefore not to interfere with the action of the State-court. The State-court but for the bankruptcy proceedings certainly has jurisdiction to enforce a lien against the land of a debtor, and if that jurisdiction is not ousted by the interference of the bankruptcy-court or by proper pleading in the cause by the assignee or creditors of the bankrupt, the State-court may lawfully proceed to enforce the lien. The lien is expressly by the bankrupt act saved and respected; and while the bankruptcy-court has the undoubted right to enforce the lien itself, and may by injunction prevent the State-court from the enforcement of it, yet by the active or passive permission of the bankruptcy-court the State-court may proceed with the enforcement of the lien.

We do not think therefore, that the jurisdiction of the

state-court was ousted in this cause. W. E. Lively, the assignee in bankruptcy of the debtor R. W. Walker, was made a defendant and served with process in the cause. He did not answer the bill, and the record fails to show, that there was any interference with the prosecution of this suit by either the Federal court, the assignee, or any creditor of R. W. Walker.

It is also assigned as error, that the court did not dismiss the bill because the question, whether Walker had any other lands was *res judicata* in the suit of Wm. Logan & Co. against said Walker. It is a sufficient answer to this assignment that the *res judicata*, if it existed, was not pleaded. It could not be taken advantage of, unless it was pleaded in this suit. (*W. M. & M. Co. v. Va. C. C. Co.*, 10 W. Va. 250.)

It is also assigned as error, that Beall was subrogated to the rights of the judgment-creditors, whose judgments he paid. We think there is nothing in this position. No authority is cited to sustain it. Beall bought the land with general warranty and afterwards found judgment-liens recorded against it, which he was compelled to pay or lose his land. We think there is no doubt of his right to subrogation. It is denied that the proof shows that Beall did pay those judgments. The commissioner's report ascertains this fact and the exact amount he paid, and no exception to the report questions the correctness of this finding.

It is also assigned as error, that the court found that the said 100 acres of land sought to be subjected was the property of R. W. Walker and not of James Walker. We have carefully examined the evidence and agree with the circuit court, that R. W. Walker and not James M. Walker bought and paid for the said land, and that the said land belonged in equity to the said R. W. Walker, and that the purchase of the same in the name of his son, James, was a fraud on his creditors.

The court did not err in overruling the exception to the commissioner's report. The first exception "for errors appearing therein," will not be considered, as it is too vague and general. The other, that it finds that R. W. Walker owned the land, is fully sustained by the evidence.

The last assignment of error is, that the court erred in

modifying and altering the contract between Perregrine Hays and Robert W. Walker as agent of James Walker; that Hays had agreed to accept in part payment of the 100 acres a lot in Arnoldsburg, Calhoun county, the title to which was in Josephine Walker, the infant-daughter of R. W. Walker. No one would suppose, that the court would be bound to stay its proceedings, until Josephine Walker should become of age, before R. W. Walker's interest in the 100 acres could be sold to discharge a lien thereon. The value of the lot was fixed by the parties at $75.00, and the court decreed, that this $75.00 with its interest was the first lien for purchase-money due to Hays. He did not object to receiving the money instead of the lot, which Walker had no right to sell; and the court did not err in decreeing the land to be sold, and this $75.00 with interest to be paid to Hays, which was the balance of the purchase-money, and requiring Hays to make the legal title, and in default that a commissioner should make it.

There is no error in the decree, and it is therefore affirmed.

AFFIRMED.